### ROBINSON v. LEE.

(Circuit Court, D. South Carolina. May 2, 1903.)

**1. STATES—EMISSION OF BILLS OF CREDIT—SOUTH CAROLINA REVENUE BOND SCRIP.**

The revenue bond scrip issued by the state of South Carolina, under Act March 2, 1872 (15 St. at Large S. C. p. 79), is invalid as in contravention of article 9, § 14, of the state Constitution of 1868, prescribing the mode in which debts shall be contracted by the state, and also be-

cause the certificates are in law and in fact bills of credit issued in violation of article 1, § 10, of the Constitution of the United States.

**2. TAX SALE—VALIDITY—INSUFFICIENT TENDER.**

A tender of payment of taxes due the state of South Carolina in part in revenue bond scrip of the state is an insufficient tender to invalidate a subsequent sale of the property for such taxes.

Action at Law for Possession of Real Property.

D. W. Robinson, for plaintiff.
Wm. H. Lyles, for defendant.

### Findings of Fact.

SIMONTON, Circuit Judge. (1) The plaintiff is a citizen and resident of the state of North Carolina. The defendant is a citizen and resident of the state of South Carolina.

(2) The value of the land, the matter in controversy, exceeds $2,000, exclusive of interest and costs. The rental value thereof is from three to five hundred dollars per annum.

(3) The tract of land, the subject-matter of the controversy, is situated in Fairfield county, in the state of South Carolina, and is thus described: All that piece, parcel, and tract of land lying in the county of Fairfield, state of South Carolina, containing about 560 acres, in School District No. 11, bounded as follows: North by lands of A. T. McCants; east by lands of A. T. McCants; south by Broad river; west by lands of J. B. Furkett.

(4) This tract was the property in fee simple of W. H. Lyles, Esq., and was returned by him for taxation. A tax was assessed upon it, both for state and county purposes, for the fiscal year 1900–1901, for the sum of $15.18. When the tax was payable Mr. Lyles tendered in payment therefor, in silver coin $13.10, 5 cents in nickel, and a revenue bond scrip of the state of South Carolina of the face value of $5, valued by him as part of the tender, $2. This tender was refused by the county treasurer for the reason that under the law he was not permitted to receive revenue bond scrip for taxes. The land was thereupon declared forfeited for taxes in due process of law, was sold according to law, and at the sale was purchased by the plaintiff.

(5) Thereupon a title to the land in fee simple was duly executed by the sheriff of Fairfield county to the plaintiff, bearing date 21st June, 1901. Having received title, the plaintiff demanded possession of the defendant, and his demand was refused.

(6) In the meantime, on the 15th April, 1901, Mr. Lyles had conveyed a fee in the land to the defendant, who had full knowledge of the premises. The defendant refused to surrender possession, denying the validity of the forfeiture and sale for taxes.

(7) The revenue bond scrip, a part of which was used by Mr. Lyles in his tender, was issued under an act of the General Assembly of South Carolina entitled "An act to relieve the state of South Carolina of all liability for its guaranty of the bonds of the Blue Ridge Railroad Company, by providing for the securing and destruction of the same," passed, over the veto of the Governor, 2d March, 1872 (15 St. at Large S. C. p. 79).

(8) The third section of that act (Id. p. 80) provides as follows:

"Sec. 3. That, to carry out the purposes of this act, the State Treasurer is hereby authorized and required to have printed, or engraved on steel, as soon as practicable, treasury certificates of indebtedness, to be known and designated as revenue bond scrip of the state of South Carolina, in such form, and of such denomination as may be determined on by the State Treasurer and the president of the Blue Ridge Railroad Company, in South Carolina, to the amount of one million eight hundred thousand dollars; which revenue bond scrip shall be signed by the State Treasurer, and shall express that the sum mentioned therein is due by the state of South Carolina to the bearer thereof, and that the same will be received in payment of taxes and all other dues to the state, except special tax levied to pay interest on the public debt."

(9) Pursuing the provisions of this act, the form and denomination of these certificates were adopted. The scrip was printed or engraved; was in form similar to that of the treasury note of the United States, and was in various denominations, from one dollar upward to five thousand dollars; it bore no interest, and whenever the scrip was received in the State Treasury it was reissued at pleasure. A specimen of the scrip is attached as an exhibit hereto.

(10) By an act of the same General Assembly dated 22d October, 1873 (15 St. at Large, p. 479), section 4 of the above act, which provided for an annual levy to meet the scrip, was repealed. By an act of the General Assembly entitled "An act to raise supplies for the fiscal year commencing November 1, 1873, and to alter and amend the law in relation to the collection of taxes" (15 St. at Large, p. 515), the character of funds in which all taxes shall be payable is declared, and among these revenue bond scrip is not included. Similar provisions in this behalf have been enacted yearly by the Legislature, and from that date to the present time.

(11) The plaintiff came into possession of the scrip tendered by him on or about ——— day of December, 1900. He received it from Edward B. Wesley, who held a large quantity of such scrip of the face value of a little over $1,000,000, which had been hypothecated by the fiscal agent of the state for a number of Blue Ridge Railroad Company bonds, of which he was the owner, and as security to him for money advanced by him to the fiscal agent of the state. This pledge Mr. Wesley still holds, and he has not foreclosed the same.

(12) On the 18th April, 1873, in a case entitled State ex rel. Shiver v. Comptroller General, 4 S. C. 185, the act of the 2d March, 1872, above referred to, was declared invalid. This case was affirmed in Auditor v. Treasurer, 4 S. C. 311, and again in State v. Cardozo, 5 S. C. 297.

(13) The guaranty to which the act of 1872 (15 St. at Large, p. 79, supra) alludes was provided for in an act of the General Assembly 15th September, 1868, entitled "An act to authorize additional aid to the Blue Ridge Railroad Company in South Carolina" (14 St. at Large, p. 25). This act, after referring to aid formerly granted by the state to the Blue Ridge Railroad Company upon certain conditions, enacts as follows:

"Section 1. Without reference to the said provisions and conditions, whenever any contract or contracts may be made by the president of the said

company, under its seal, and as provided by said act, and not exceeding one million of dollars, it shall be the duty of the Comptroller General to endorse thereon that the faith and funds of the state are pledged to the faithful performance of the said contract or contracts, as respects the punctual payment both of the principal and interest, according to the terms of the said contract or contracts: provided, that so much of said issue as may be necessary, not exceeding three hundred thousand dollars, shall be applied to the redemption of the present bonded debt of the said company.

"Sec. 2. That the faith and the funds of the state of South Carolina be, and the same are hereby, pledged to secure the punctual payment of any contracts which shall be made by the Blue Ridge Railroad Company in South Carolina, from any person or persons, corporation or corporations, to an additional amount, not exceeding three millions of dollars, either in the United States or Europe; and when such contracts shall be made by bond or bonds, signed by the president of the said Company, under its seal, and countersigned by the secretary or treasurer thereof, it shall be the duty of the Comptroller General of this state to endorse thereon, that the faith and funds of the state of South Carolina are pledged to the faithful performance of the said contract or contracts, as it respects the punctual payment both of the principal and interest, according to the terms of said contract or contracts: provided, that the interest made payable thereon shall not exceed seven per cent. per annum, in quarterly or half yearly payments. And that as soon as the Comptroller General shall have made any such endorsement on any such contract, the whole estate, property and funds in the state of South Carolina, Georgia, North Carolina and Tennessee, which the said company may then possess, or shall afterwards acquire, shall thenceforth stand pledged and mortgaged to the state, without any further act or deed on the part of the company, for the faithful and punctual performance on the part of said company, of such contract, in priority and preference of any other debt which the said company may hereafter create or incur: and, further provided, that the said bonds or any part thereof shall not be used unless upon the express condition that upon application to the Congress of the United States, or to private capitalists, the amount of three millions of dollars in currency, or so much of that sum as may be necessary, shall be furnished in exchange or upon the security of said bonds."

(14) The Constitution of the state of South Carolina, ratified April 16, 1868, of force when the last-mentioned act was passed, in article 9, § 14, provides as follows:

"Sec. 14. Any debt contracted by the state shall be by loan on state bonds, of amounts not less than fifty dollars each, on interest payable within twenty years after the final passage of the law authorizing such debt."

Section 10 of the same article provides as follows:

"Sec. 10. No scrip, certificate or other evidence of state indebtedness shall be issued except for the redemption of stock, bonds, or other evidence of indebtedness previously issued, or for such debts as are expressly authorized in this Constitution."

## Conclusions of Law.

The tender of revenue bond scrip for taxes made by Mr. Lyles, the grantor of defendant, was not sufficient tender:

1. The issue of the revenue bond scrip was invalid, because it was in contravention of section 14, art. 9, of the Constitution of 1868, prescribing the mode in which debts shall be contracted by the state.

2. Because the guaranty of the bonds of the Blue Ridge Railroad Company under the act of 1868 was in contravention of article 9, § 14, of the Constitution of 1868, and so the revenue bond scrip was issued for the redemption of what was erroneously supposed to be an obligation of the state.

3. The issue of revenue bond scrip is also invalid, because this scrip in law and in fact are bills of credit, and so in conflict with section 10, art. 1, of the Constitution of the United States.

4. The plaintiff is the rightful owner in fee simple of the tract of land described in the complaint, and is entitled to immediate possession thereof.

5. The plaintiff is entitled to the mesne profits, by way of damages, at the rate of $400 per annum from the ——— day of June, 1901, to the date of the entry of this judgment.